UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| RONALD D. GEDDA, ) | Case No. 6:13-bk-02238-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION DENYING**
**DENYING DEBTOR'S MOTION FOR CONVERSION**

Debtor, Ronald Gedda, belatedly wants to convert his Chapter 7 case to a Chapter 11 case[1] to regain control of his assets and to stop his Chapter 7 Trustee, Richard B. Webber, from pursuing fraudulent transfer claims against his wife, Cynthia Cabrera, in a related adversary proceeding. The Court denies the Debtor's request.

Debtor previously was involved in various substantial business ventures in Kentucky, South Carolina, Tennessee, and Florida. The recent economic recession caused these businesses to flounder and, eventually, Surety Bank, the Debtor's largest creditor, obtained substantial judgments against him.[2] Debtor filed for relief under Chapter 7 of the Bankruptcy Code[3] on February 28, 2013.[4] He received his discharge on June 11, 2013.[5]

On January 1, 2014, the Trustee initiated a related adversary proceeding[6] against the Debtor's wife, Cynthia Ann Cabrera, Vijay R. Patel, and PBI Bank, Inc., seeking to recover

---

[1] Doc. No. 100.
[2] Surety Bank has filed Claim 6-1 against the Debtor in the amount of $912,698.70.
[3] All references to the Bankruptcy Code are to 11 U.S.C. § 101 *et seq*.
[4] Doc. No. 1.
[5] Doc. No. 26.
[6] Adversary Proceeding No. 6:14-ap-1-KSJ.

allegedly fraudulent transfers.[7] The transfers revolve around a promissory note initially made by Defendant Patel (the "Note") to the Debtor.[8] The Trustee alleges the Debtor fraudulently transferred the Note to Cabrera, who then pledged the Note to co-Defendant PBI Bank.

Debtor, hoping to stop this litigation against his wife and to prevent the Trustee from gaining control over the Note, filed his Motion for Conversion.[9] The Trustee immediately objected and filed an emergency motion to appoint a chapter 11 trustee if the case is converted.[10] The Court held an evidentiary hearing on the Debtor's Motion for Conversion on January 16, 2015.[11]

The core disputes in this adversary proceeding involve the Note. On January 1, 2009, the Debtor and Patel executed an agreement whereby in "return for a loan" Patel agreed to pay the Debtor $1,450,000 in monthly installments over twenty years.[12] The Debtor married Cabrera in January 2011, during his litigation with Surety Bank but shortly before Surety Bank obtained judgments against him in June 2011 and July 2012.

Shortly after their marriage, the Debtor and Cabrera executed a handwritten agreement ("Agreement") purporting to transfer their assets to one another.[13] Under the Agreement, on July 21, 2011, the Debtor transferred substantial assets including his entire interest in the Note to his new wife, Cabrera.[14] In return, Cabrera agreed to give the Debtor relatively *de minimus* assets of

---

[7] The operative complaint is the Trustee's Second Amended Complaint, filed on February 5, 2015. Doc. No. 136 in Adversary No. 6:14-ap-00001-KSJ.
[8] Plaintiff's Ex. 1.
[9] Doc. No. 100.
[10] Doc. No. 101.
[11] At the evidentiary hearing, the Trustee testified, and the parties additionally submitted exhibits, including deposition designations of Cabrera, the Debtor, David L. Shadburne (Defendant PBI's Corporate Representative), Mason McCauley, Jason Gedda (the Debtor's son) and William Gambert. The Debtor objected to portions of the depositions of Shadburne, McCauley, and Jason Gedda. (Doc. Nos. 130–32 in Adversary No. 6:14-ap-00001-KSJ). The bulk of the Debtor's objections relate to relevancy. The Court concludes the testimony is relevant and will overrule the Debtor's objections *in toto*.
[12] Plaintiff's Ex. 1.
[13] Plaintiff's Ex. 27, 61:1-15.
[14] Plaintiff's Ex. 13. At the time of the transfer, the Note had a remaining balance due of $1,411,662.46.

half of the "profits" from Sibs Plaza, a shopping development, and a 50% interest in her condominium unit sometime in the future.[15]

In the months following, the Debtor transferred additional and substantial assets to Cabrera. Debtor conveyed his twenty-five percent (25%) interest in the real property underlying the Racing's North Turn restaurant to Cabrera and himself as tenants by the entirety,[16] and his interest in Oceandocks, Inc., the entity that owns the North Turn restaurant, to the both of them as a married couple.[17]

In March 2012, Cabrera, the Debtor, and his son Jason Gedda further pledged the Note to PBI Bank in return for forbearance of a defaulted loan.[18] On December 7, 2012, Patel made a $650,000 payment on the Note.[19] Patel wired the payment to directly to Cabrera's bank account,[20] and, within two months, Cabrera had transferred all but $3,218.82 of the monies out of her account.[21]

Cabrera is not involved in the management of the business ventures transferred to her from the Debtor. Jason Gedda apparently manages the businesses and actively collects upon the Note. Cabrera freely admits she has no mind for business nor a desire to get involved. Jason has power of attorney for both the Debtor and Cabrera, possesses a stamp with Cabrera's signature that allows him to make deposits to and sign checks from her Kentucky bank account, and serves as the liaison between the Debtor and Cabrera and PBI Bank.

---

[15] Plaintiff's Ex. 10. The record indicates that Cabrera's Sibs Plaza property is an 18 unit shopping center with 13 storage units. Cabrera's condo located in Daytona Beach Shores, Florida is the primary residence for her and the Debtor. The condo is in Cabrera's name but the down payment was provided by the Debtor, Cabrera's ex-husband, and her daughter. Plaintiff's Ex. 71:2-17. According to the Agreement, Cabrera agreed to transfer the interest to the Debtor "after her 2010 $8,000 tax credit is in place more than 3 years." Plaintiff's Ex. 10.
[16] Plaintiff's Ex. 12.
[17] Plaintiff's Ex. 11.
[18] Plaintiff's Ex. 15
[19] Plaintiff's Ex. 17.
[20] Prior to this wire transfer, Cabrera's bank account had a balance of $0.00. Plaintiff's Ex. 16.
[21] Bank statements reveal this money went to Cabrera's ex-husband, Juan Carlos Cabrera, in Argentina ($80,000); the Debtor's son Jason Gedda, through his entity Roadside Lodging, LLC ($400,000); and the Debtor's brother John Gedda ($30,000). Plaintiff's Ex. 16 & 19.

As the litigation between the Trustee and Cabrera ratcheted up, the Debtor now seeks to convert his Chapter 7 case to a Chapter 11 case arguing he can better preserve the estate for creditors primarily by limiting the attorney fee costs the Trustee is incurring in the fraudulent transfer litigation. Debtor's argument is that, if he regains control, he will stop the litigation costs and somehow repay his creditors. The Trustee objects to the conversion arguing that the Debtor just wants to end the litigation against his wife over the Note and that the Debtor has no credible means to pay his creditors because the Debtor already has transferred his assets to Cabrera pre-petition and has no independent, sufficient source of income to fund any plan of reorganization.

Section 706(a) of the Bankruptcy Code governs conversion from Chapter 7, which states "[t]he debtor may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."[22] The United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*[23] explained this absolute right to convert is tempered by § 706(d), which provides "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."[24] The Court held that a court may deny a debtor's request to convert from Chapter 7 to Chapter 13 where cause exists under § 1307(c) to dismiss or convert the case.[25]

Although *Marrama* involved a debtor seeking to convert from Chapter 7 to Chapter *13*, its logic extends to requests to convert a case from Chapter 7 to Chapter *11*. Conversion from Chapter 7 to Chapter 11 is impermissible where "cause" under § 1112(b) exists to convert a

---

[22] 11 U.S.C. § 706(a).
[23] 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).
[24] 11 U.S.C. § 706(d).
[25] *Marrama*, 549 U.S. at 373.

Chapter 11 case to a Chapter 7 case or to dismiss the Chapter 11 case all together.[26] "To permit conversion to Chapter 11 in those circumstances would be futile and a wasted act,"[27] "that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors."[28] The party objecting to conversion has the burden of demonstrating why the Chapter 7 case should not be converted.[29]

Section 1112(b)(4) lists numerous situations where "cause" exists to foreclose a debtor's access to Chapter 11 relief.[30] Relevant here is § 1112(b)(4)(A) which defines "cause" as a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[31] "Both prongs of this subsection are necessary for 'cause' to exist," and the second prong is focused "not on the technical issue of 'whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort.'"[32]

Besides refusing to convert a case for "cause", the Supreme Court in *Marrama* also found that courts should refuse to convert a case where the debtor has engaged in "bad faith" that is "atypical" or "extraordinary" including misleading or fraudulent behavior.[33] Courts use a "totality of circumstances" approach to determine if a debtor engaged in bad faith conduct and if conversion is appropriate.[34] This approach provides courts the "flexibility to consider the specific circumstances of each case."[35]

---

[26] *In re Basil St. Partners, LLC*, 477 B.R. 856, 861 (Bankr. M.D. Fla. 2012).
[27] *In re Eugene Alexander, Inc.*, 191 B.R. 920, 924 (Bankr. M.D. Fla. 1994).
[28] *Marrama*, 549 U.S. at 375.
[29] *Basil St. Partners*, 477 B.R. at 862.
[30] 11 U.S.C. § 1112(b)(4).
[31] 11 U.S.C. § 1112(b)(4)(A).
[32] *Basil St. Partners*, 477 B.R. at 862 (citing *In re Khan,* 2012 WL 2043074, at *6 (9th Cir. B.A.P. June 6, 2012)).
[33] *Marrama*, 549 U.S. at 375; *In re Alvarez*, 10-45709-BKC-AJC, 2011 WL 5593176, at *4 (Bankr. S.D. Fla. 2011).
[34] *In re FMO Associates II, LLC*, 402 B.R. 546, 552 (Bankr. E.D.N.Y. 2009).
[35] *Id.* at 552.

Courts using this flexible "totality of the circumstances" approach to determine bad faith consider factors indicating abuse of the overall bankruptcy system, such as whether:

- The debtor has only one asset;
- The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
- The debtor has little or no cash flow;
- The debtor cannot meet current expenses;
- The debtor has essentially no income; and
- The debtor has received a discharge.[36]

In addition to the existence of "cause" and "bad faith", courts lastly should consider "the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion; [and] the effect of conversion on the efficient administration of the bankruptcy estate."[37]   Here, the Debtor fails on all three prongs of the analysis.

Gedda is not eligible to be a Chapter 11 debtor.  Under Section 1112(b)(4)(A) of the Bankruptcy Code, the Debtor has no likely prospect of reorganization and conversion would only cause delay and a further diminution of the estate.  Debtor has not paid his expenses on a timely basis since 2011.  His only current income is his relatively *de minimus* social security benefits.  He chose to give away to or to jointly title his assets with his new wife pre-petition.  He has limited or no wholly owned assets.  Yet, he now argues he can fund a plan through voluntary contributions of non-debtor entities, like his wife and her former husband, and recovery on a post-petition personal injury claim.  Debtor's limited income, his non-existent cash flow, and illusory funding sources demonstrate the utter implausibility of Gedda successfully confirming a

---

[36]*FMO Associates II,* 402 B.R. at 551-52; *In re Schultz*, 436 B.R. 170, 176 (Bankr. M.D. Fla. 2010); *In re Shankman*, 382 B.R. 591, 597 (Bankr. E.D.N.Y. 2008).
[37] *Shankman*, 382 B.R. at 597.

Chapter 11 plan.[38] Debtor's nebulous business prospects simply do not justify allowing him, at this late date, to now "try" a Chapter 11 case.

Debtor's belated request to convert to Chapter 11 alone is suspect as "bad faith". Debtor filed for Chapter 7 protection in February 2013, over two years ago. He received a discharge in June 2013.[39] The receipt of a discharge weighs heavily against conversion.[40] He did not file his request to convert to Chapter 11 until September 9, 2014, and only after the Trustee was actively and aggressively pursuing fraudulent transfer claims against his wife. Gedda makes this desperate attempt to convert to Chapter 11 to wrangle control of this litigation from the Trustee, to avoid the consequences of receiving his Chapter 7 discharge, and to delay or frustrate the legitimate collection efforts of the debtor's creditors. Debtor makes his request to convert this case to Chapter 11 in bad faith.

Gedda's creditors deserve to be paid. A recovery will only come from the Trustee's efforts to avoid these fraudulent transfers. Conversion of this case to Chapter 11 is not in the best interests of the creditors and will have a negative effect on the administration of the estate. Debtor's Motion for Conversion is denied.

A separate order shall be entered simultaneously with this Memorandum Opinion.

**DATED:** March 24, 2015.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[38] *Schultz*, 436 B.R. at 176 (providing "[a] Chapter 11 case may be dismissed, for example, where a debtor had 'virtually no earnings' for several years before the petition was filed.")
[39] Doc. No. 26.
[40] "As one court has stated: 'Where the debtors have already received their discharge, it is clear that their purpose in converting to a Chapter 13 is not to repay their debts. Rather their purpose is to evade their obligations under Chapter 7.'" *Shankman*, 382 B.R. at 597 (quoting *In re Jeffrey*, 176 B.R. 4, 6 (Bankr. D. Mass. 1994)).

Raymond Rotella, Attorney for Debtor, is directed to serve a copy of this Memorandum Opinion on interested parties and file a proof of service within 3 days of entry of the Memorandum Opinion.